Tom Buchele, OSB No. 081560
Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Tel: 503-768-6736
Fax: 503-768-6642
Email: tbuchele@lclark.edu

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **BLUE MOUNTAINS BIODIVERSITY PROJECT,** an Oregon nonprofit corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>**HOMER WILKES,** Under Secretary for Natural Resources and Environment, United States Department of Agriculture, in his official capacity; **UNITED STATES DEPARTMENT OF AGRICULTURE,** an agency of the United States; **GLENN CASAMASSA,** Regional Forester for Region 6, in his official capacity; **SHANE JEFFRIES,** Forest Supervisor, Ochoco National Forest, in his official capacity; **MICHAEL RAMSEY,** District Ranger for the Lakeview Ranger District, Fremont Winema National Forest, in his official capacity; **UNITED STATES FOREST SERVICE,** an agency of the United States Department of Agriculture,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR VACATUR OF ILLEGAL AGENCY DECISION, INJUNCTIVE, AND DECLARATORY RELIEF** |

**INTRODUCTION**

1.      Plaintiff Blue Mountains Biodiversity Project ("BMBP") challenges the Defendant United States Forest Service's ("Forest Service" or "the Service") Decision Memorandum ("Decision Memo"), which approved the South Warner Habitat Restoration Project ("South Warner Project" or "the Project") on the Fremont-Winema National Forest ("Fremont-Winema" or "FWNF"). Defendant District Ranger Michael Ramsey ("Ramsey") signed the Decision Memo on December 27, 2021. Unless named specifically, Defendants Wilkes, Casamassa, Ramsey, the United States Department of Agriculture, and the United States Forest Service are collectively referred to herein as "Defendants," "Forest Service," or "the Service."

2.      BMBP also challenges the Decision Notice and Finding of No Significant Impact ("DN/FONSI") for the 2021 *Eastside Screens Amendment: Forest Management Direction for Large Diameter Trees in Eastern Oregon and Southeastern Washington* ("Eastside Screens Amendment"). The illegal DN/FONSI for the 2021 Eastside Screens Amendment amended the land and resources management plan ("LRMP" or "forest plan") for the FWNF, along with five other national forest LRMPs in eastern Oregon and southeastern Washington, and was signed by then-Under Secretary for Natural Resources and Environment James Hubbard on January 12, 2021, in contravention of the pre-decisional administrative review process required by 36 C.F.R. § 219, Subpart B (2012). *See* 36 C.F.R. § 219.51(b).

3.      The South Warner Project involves commercial and non-commercial logging on the FWNF, including the logging of large mature trees that are protected from logging via the FWNF Forest Plan, as amended by the 1995 *Revised Continuation of Interim Management Direction Establishing Riparian, Ecosystem and Wildlife Standards for Timber Sales* ("Eastside Screens" or "Screens"). The South Warner Decision Memo relies upon the illegal 2021 amendment to the provisions of the Eastside Screens in its authorization of the logging of large trees up to 30" diameter at breast height ("DBH") in violation of the original provisions of the

COMPLAINT FOR VACATUR, INJUNCTIVE, AND DECLARATORY RELIEF          1

Screens in the FWNF Forest Plan. Therefore, the Decision Memo and the portion of the South Warner Project allowing the logging of trees ≥21" DBH violate NFMA and the Administrative Procedure Act ("APA") as well.

4.     The procedure undertaken by the Service and the Under Secretary for Natural Resources and Environment in approving the 2021 Eastside Screens Amendment illegally circumvented the administrative objection process in order to avoid public objections, in violation of NFMA. NFMA requires the Service engage in a public objections process for proposed forest plan amendments. 36 C.F.R. § 219.52. The Forest Service attempted to circumvent this regulatory requirement by having then-Under Secretary for Natural Resources and Environment James Hubbard sign the Decision Notice as the responsible official, relying upon an exemption found at 36 C.F.R. § 219.51(b). Eastside Screens Amendment DN/FONSI at 2, 11 (Jan. 2021). However, this exemption applies only where the Under Secretary was the agency official responsible for *proposing* the amendment, a fact belied here by multiple Federal Register Notices and preliminary National Environmental Policy Act ("NEPA") documents listing Ochoco Forest Supervisor Shane Jeffries as the original Responsible Official and noting that the amendment would, in fact, be subject to the administrative objections process. This textbook bait-and-switch is a blatant attempt to illegally circumvent the vitally important—now more than ever—public input and administrative review processes outlined in 36 C.F.R. § 219, Subpart B. As a result, the South Warner Project and its Decision Memo that rely upon the illegally-approved Eastside Screens Amendment for the logging of trees ≥21" DBH are illegal as well.

5.     The South Warner Project is the first timber project approved by the Service on the FWNF to rely upon the illegal Eastside Screens Amendment and corresponding guideline that purports to allow for the logging of these large arboreal elders, which are in fact still protected by the Eastside Screens mandatory restrictions. The South Warner Decision Memo approves the commercial logging of up to 16,000 acres, which includes hundreds of very large established trees once off-limits to these destructive forms of "management," in addition to

commercial and non-commercial thinning of the understory. The Decision Memo relies upon the 2021 Eastside Screens Amendment to authorize the logging of these large established trees categorized by size as ≥21" DBH. In drier forests such as the FWNF, these large trees take over a century to mature into the established behemoths that they have become.

6.    In order to prevent the Forest Service from engaging in the unsustainable and illegal logging of vitally important old and large trees on the Fremont-Winema National Forest in violation of the Service's legal duties under NFMA, Plaintiff seeks from this Court declaratory and injunctive relief, and an order setting aside the Forest Service's illegal DN/FONSI for the Eastside Screens Amendment and the Decision Memo for the South Warner Project to prevent such violations of law and irreparable harm from occurring.

## PARTIES

7.    Plaintiff **BLUE MOUNTAINS BIODIVERSITY PROJECT** is a nonprofit environmental advocacy organization dedicated to the conservation of the natural ecosystems of the Pacific Northwest and the native flora and fauna they harbor. BMBP and its supporters actively participate in governmental decision-making processes on public lands, including National Forests, throughout Oregon. BMBP has offices in Fossil, Oregon and Eugene, Oregon.

8.    The mission of BMBP is to protect and restore the biodiversity of the Blue Mountains region of Oregon and Washington and to educate the public about threats to forest ecosystems in eastern Oregon. In order to further its mission and protect the interests of BMBP's supporters in preserving the biodiversity of the Pacific Northwest forests, BMBP monitors timber sales and other Forest Service activities in the Deschutes, Malheur, Umatilla, Wallowa-Whitman, Ochoco, and Fremont-Winema National Forests.

9.    BMBP's officers, staff, and supporters regularly hike, camp, hunt, bird watch, view wildlife, photograph scenery and wildlife, and engage in other vocational, educational, scientific, and recreational activities on the FWNF, including the South Warner Project area and adjacent lands.

10.      BMBP's officers, staff, and supporters reside near and/or regularly visit the South Warner Project area. BMBP's officers, staff, and supporters derive recreational, inspirational, religious, scientific, and aesthetic benefits from their activities on the FWNF, including in and around the project area, and they intend to continue to use and enjoy these areas on an ongoing and frequent basis in the near and distant future. The organization and its supporters are deeply invested in the South Warner Project area specifically and as part of the larger ecological health of the FWNF and the Eastside landscape. Specifically, at least one of BMBP's supporters is an avid hunter who uses the project area for hunting and camping. Other supporters intentionally seek out natural areas of the forest untouched by the management practices described in the Decision Memo. The approved commercial logging and "restoration" activities detailed in the Decision Memo and supporting documents severely limit opportunities to partake in these activities. These harms include the logging of large trees and adverse effects to wildlife habitat and water quality, impacting not only wildlife and scenic values, but also potentially human health and well-being. If the Forest Service implements the South Warner Project as described in the Decision Memo, the logging, and especially the logging of large trees, will negatively affect the hunting, naturalistic landscape, and other recreational activities in the area, which will cause BMBP supporters to avoid the project area.

11.      BMBP has an organizational interest in the proper, lawful, and scientifically sound management of all the Eastside forests, including the FWNF. The organization's mission to promote the protection and restoration of Eastside forests depends on the responsible, scientifically sound, and legally sufficient management of the FWNF. The aesthetic, recreational, scientific, and religious interests of BMBP's supporters have been and will be adversely affected and irreparably injured if Defendants continue to act as alleged herein, and affirmatively implement the decision that Plaintiff challenges. These are actual concrete injuries caused by Defendants' failure to comply with mandatory duties under NFMA, NEPA and the Administrative Procedure Act ("APA"). The injuries would be redressed by the relief sought.

12.     BMBP has participated extensively in administrative actions to protect plaintiff's interests on the FWNF. BMBP actively participated in the administrative process for the South Warner Project, including submitting substantive comments on the scoping notice on July 19, 2021. BMBP has exhausted any and all available administrative remedies. A reviewable final agency action exists that is subject to this Court's review under 5 U.S.C. §§ 702 & 704.

13.     BMBP has likewise participated extensively in administrative actions to protect plaintiff's interests in the Eastside Screens Amendment process. BMBP submitted substantive public comments on the Preliminary Environmental Assessment for the 2021 Eastside Screens Amendment on October 13, 2021. Because the Forest Service illegally did not provide any other opportunity for public participation by BMBP or any other member of the public, BMBP has exhausted any and all administrative remedies. A reviewable final agency action exists that is subject to this Court's review under 5 U.S.C. §§ 702 & 704. See 36 C.F.R. §219.51(b). Because the South Warner Project relies on the FWNF Forest Plan as amended by the 2021 Eastside Screens Amendment, this action is ripe for review.

14.     BMBP's physical address is 27803 Williams Lane, Fossil, Oregon 97830.

15.     Defendant **HOMER WILKES**, Under Secretary for Natural Resources and Environment, is an official of the United States Department of Agriculture. The Under Secretary for Natural Resources and Environment's office is tasked with the implementation of the United States Department of Agriculture's legal environmental obligations. Homer Wilkes' predecessor in this office, James Hubbard, was the Responsible Official that signed the Eastside Screens Amendment DN/FONSI. The DN/FONSI represents the official agency action for the Eastside Screens Amendment challenged in this case. Defendant Wilkes is sued only in his official capacity.

16.     Defendant **UNITED STATES DEPARTMENT OF AGRICULTURE** ("USDA") is a federal executive agency of the United States of America. It is tasked with overseeing and implementing programs related to the farming, ranching, and forestry industries as well as regulating food quality, safety, and nutrition labeling. The USDA houses not only the

COMPLAINT FOR VACATUR, INJUNCTIVE, AND DECLARATORY RELIEF          5

office of the Under Secretary for Natural Resources and Environment, but also the United States Forest Service. The USDA is an agency within the meaning of the APA, 5 U.S.C. § 551.

17.     Defendant **GLENN CASAMASSA** is the Regional Forester for Region 6 of the USDA and Forest Service, which covers the six national forests impacted by the Eastside Screens Amendment, including the Fremont-Winema National Forest. Region 6 issued the preliminary and final environmental assessments, as well as the DN/FONSI signed by the Under Secretary for Natural Resources and Environment, associated with the Eastside Screens Amendment. Defendant Casamassa is sued only in his official capacity.

18.     Defendant **SHANE JEFFRIES** is the Forest Supervisor for the Ochoco National Forest, and was originally listed as the Responsible Official for the Eastside Screens Amendment. Defendant Jeffries is sued only in his official capacity.

19.     Defendant **MICHAEL RAMSEY**, District Ranger for the Lakeview and Bly Ranger Districts, Fremont-Winema National Forest, is the responsible official for the South Warner Project, having signed the Decision Memo challenged in this case. The Decision Memo was the Forest Service's final agency action regarding the South Warner Project. Defendant Ramsey is sued only in his official capacity.

20.     Defendant **UNITED STATES FOREST SERVICE** is an agency of the United States and is a division of the Department of Agriculture, and is charged with managing the public lands and resources of the FWNF, in accordance and compliance with NEPA and NFMA and their implementing regulations. The Forest Service is an agency within the meaning of the APA, 5 U.S.C. § 551.

21.     Defendants are collectively referred to as "Defendants," "Forest Service," or "the Service."

### JURISDICTION AND VENUE

22.     This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 701–706 (APA) and 28 U.S.C §§ 1311 (federal question), 2201 (declaratory relief), 2202 (injunctive relief), 2412 (costs and fees). Plaintiff has challenged final agency actions as defined by the

APA, 5 U.S.C. § 704. Plaintiff has exhausted all required administrative remedies provided by the Forest Service and is seeking judicial review of Forest Service final administrative actions which were not subject to administrative review, pursuant to 36 C.F.R § 220.6(f)(6) and the South Warner Decision Memo at 15 for the South Warner Project, and 36 C.F.R. § 219.51(b) and the Eastside Screens Amendment DN/FONSI at 13 for the Eastside Screens Amendment. Plaintiff thus seeks judicial review of final administrative actions of the Forest Service. See 5 U.S.C. § 704 (actions reviewable).

23.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because Defendant Michael Ramsey, the Lakeview and Bly District Ranger who signed the challenged Decision Memo, is headquartered in Lakeview, Lake County, Oregon, and the events giving rise to the claims primarily occurred in Oregon.

24.     This case is properly filed in Medford, Oregon and properly before the Medford Division of this District pursuant to Local Rules 3-2 and 3-3 because District Ranger Michael Ramsey signed the challenged South Warner Decision Memo and is responsible for the Lakeview Ranger District found within Lake County, Oregon.

## STATUTORY AND REGULATORY FRAMEWORK

### National Environmental Policy Act (42 U.S.C. §§ 4321–4370(h))

25.     Congress enacted the National Environmental Policy Act in 1969, directing all federal agencies to assess the environmental impacts of proposed actions that significantly affect the quality of the human environment. NEPA seeks to "promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321. NEPA obligates agencies to "make diligent efforts to involve the public" in implementing their NEPA procedures, including making available to the public high-quality information, including accurate scientific analyses, expert agency comments, and public comments. 40 C.F.R. § 1506.6(a) (2020). NEPA's public disclosure goals are twofold: (1) to ensure that the agency has carefully and fully contemplated the environmental effects of its

action: and (2) to ensure that the public has sufficient information to review, comment on, and challenge (if necessary) the agency's action. *See* 42 U.S.C. §§ 4321, 4332.

26.     The Council on Environmental Quality ("CEQ") promulgated uniform regulations to implement NEPA that are binding on all federal agencies. Those regulations are found at 40 C.F.R. Parts 1500–1508 (2020). The Forest Service utilized CEQ regulations that were in effect before September 14, 2020 to enact the Eastside Screens Amendment (the "2019 CEQ regulations"). The Forest Service then developed the South Warner Project and announced the Categorical Exclusion ("CE") from all NEPA analysis using the CEQ regulations that were in force from September 14, 2020 until May 20, 2022 (the "2020 CEQ regulations"). *See* National Environmental Policy Act Implementing Regulations Revisions, 87 Fed. Reg. 23453 (Apr. 20, 2022) (revising certain provisions of NEPA's implementing regulations that were in place from 2020 to 2022).

27.     The Court may review agency actions taken pursuant to NEPA under the APA. 5 U.S.C. §§ 702, 704, 706.

28.     NEPA requires agencies to prepare a "detailed statement" assessing the possible environmental impacts of all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). This statement is known as an environmental impact statement ("EIS"). A separate document known as an environmental assessment ("EA") can be prepared to aid agencies in determining whether or not a proposed activity will significantly affect the quality of the human environment. 40 C.F.R. § 1501.5(b) (2020); 40 C.F.R. § 1508.1(h) (2020). The role of the EA is to determine whether an EIS is needed or is a finding of no significant impact ("FONSI") is appropriate. *Id*.

29.     If an agency determines that an entire category or class of federal actions "normally do not have a significant effect on the human environment," the agency can exclude that category of actions from analysis an EIS or EA. 40 C.F.R. § 1501.4 (2020); 40 C.F.R. § 1508.1(d) (2020).

30.     To determine the significance of a federal action, CEQ regulations require agencies "analyze the potentially affected environment and degree of the effects of the action," including "short- and long-term effects," "beneficial and adverse effects," "[e]ffects on public health and safety," and "[e]ffects that would violate Federal, State, Tribal, or local law protecting the environment." 40 C.F.R. § 1501.3(b) (2020).

31.     "Effects or impacts" under the 2020 CEQ regulations are defined as "changes to the human environmental from the proposed action or alternatives that are reasonably foreseeable and have a reasonably close causal relationship to the proposed action or alternatives," including "effects that are later in time or farther removed in distance from the proposed action or alternatives." 40 C.F.R. § 1508(g) (2020).

32.     When a federal agency determines that a category of actions is appropriately excluded from NEPA analysis, the agency must present the reasons why the impacts of this category of actions normally does not have a significant effect on the environment and publish the categories of actions excluded from NEPA analysis in their agency NEPA procedures (*see* 40 C.F.R. § 1507.3(e)(2)(ii) (2020)). 40 C.F.R. § 1501.4(a) (2020).

33.     For any federal action an agency determines is covered by a categorical exclusion, the agency must still evaluate the action for "extraordinary circumstances in which a normally excluded action may have a significant effect," and if it determines such an extraordinary circumstance is present, the agency may have to prepare and EA or EIS. 40 C.F.R. § 1501.4(b)(1)-(2) (2020).

34.     Public involvement is considered a vital part of the NEPA process, with the CEQ regulations requiring federal agencies to "[p]rovide public notice of NEPA-related hearings, public meetings, and other opportunities for public involvement," such as opportunities for comments and an objections process. 40 C.F.R. § 1506.6(b) (2020).

**National Forest Management Act (16 U.S.C. §§ 1600–1614)**

35.     The National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.*, is the primary statute governing the administration of national forests. Agency actions taken pursuant to NFMA are reviewable under the APA. 5 U.S.C. §§ 702, 704, 706.

36.     NFMA requires the Forest Service to develop and implement a land and resource management plan for each unit of the National Forest System. 16 U.S.C. § 1604(a). Forest Plans guide natural resource management activities forest-wide, setting standards, management area goals and objectives, and monitoring and evaluation requirements. A Forest Plan must provide for multiple uses for the forest, including: recreation, range, timber, watershed, and wildlife and fish purposes. *Id.* § 528

37.     Under NFMA, all permits, contracts, and other instruments for the use of National Forest System lands "shall be consistent with the land management plans." *Id.* § 1604(i). Therefore, after a Forest Plan is developed, all subsequent agency actions impacting National Forest System resources must comply with NFMA, regulations promulgated under NFMA's authority, and the applicable governing Forest Plan.

38.     During the 1990s, the Forest Service amended the FWNF and every other forest plan in Oregon and Washington east of the Cascade Range by adopting interim direction commonly known as the Eastside Screens. The Screens were designed to address the rapidly dwindling presence of large, habitat-providing and carbon-storing large trees removed from the landscape over decades of over-logging. The Screens prohibit logging in late and old successional ("LOS")[1] forest stands below the historical range of variability ("HRV")[2] as well as prohibiting the logging of trees ≥21" DBH anywhere on eastern national forests.

39.     Under NFMA, the Forest Service shall provide for public participation when revising or amending a forest plan, which it may do "in any manner whatsoever after final

---

[1] Sometimes also referred to as "late and old structure," LOS is generally synonymous with the term "old growth."
[2] HRV is the composition of species and structure believed to be present on the forest pre-settlement by European/early-American colonists.

adoption after public notice," including making potential revisions available to the public at least three months before final adoption and holding public meetings or comparable processes to foster public participation in the review of such amendments. *Id.* §§ 1604(d)(1), 1604(f)(4). Concurrent regulations promulgated under NFMA set out the requirements for a pre-decisional administrative review process for plans, plan amendments, and plan revisions—referred to as an objection process—for individuals to obtain an "independent Forest Service review and resolution of issues before approval." 36 C.F.R. § 219.50. Objections give interested parties not only the right of independent Forest Service review, but also an opportunity to introduce scientific evidence and site-specific conditions from independent surveys into the administrative record. This is an important step for interested third parties, as it gives them the right to object and introduce evidence not only on the Final EA, but also the Draft DN/FONSI that is typically published in tandem with the FEA. Therefore, this objection period is vitally important as the only opportunity third parties get to comment or object to the FEA and the DN/FONSI, and introduce such evidence and influence the Forest Service's final decision.

40.    Not every plan, plan amendment, or plan revision is subject to this objection process. 36 C.F.R. § 219.51. The regulations create exceptions to the formal objection process for plan amendments that do not receive substantive comments from the public (*id.* § 219.51(a)), plan amendments that are *proposed* by the Secretary of Agriculture or the Under Secretary for Natural Resources and Environment, (*id.* § 219.51(b) (emphasis added)), and plan amendments that are subject to some other administrative review process consistent with NFMA's requirements. *Id.* § 219.51(c). If such a plan amendment is approved without an opportunity for objections, the responsible official for that project must include an explanation as to why no such process will be held with the signed decision document. *Id.* § 219.51(d). Such a plan amendment that is properly not subject to the objection process because it was proposed by the Secretary of Agriculture or Under Secretary for Natural Resources and Environment "constitutes the final administrative determination of the" agency. *Id.* § 219.51(b).

41.    Alternatively, for all other plans, amendments, and revisions, the responsible official is required to disclose in the NEPA scoping process that a decision will be subject to the objection process, "in addition to the public notice that begins the objection filing period, as required by [36 C.F.R.] § 219.16." 36 C.F.R. § 219.52(a). Such a public notice must be made available to interested parties, *id.* § 219.52(b), and its contents must include the elements outlined at *id.* § 219.52(c)(1)-(7). Only parties that have submitted substantive formal comments during the public comment period are permitted to file an objection. *Id.* § 219.52(c)(4); § 219.53(a). No issue may be raised in an interested party's objection that was not previously raised in that party's substantive comments, "unless the objection concerns an issue that arose after the opportunities for formal comment." *Id.* §219.53(a).

42.    36 C.F.R. § 219.16(a)(3) specifies that a formal public notice is required "to begin the objection period for a plan, plan amendment, or plan revision before approval." The objection period for plan amendments that required the preparation of an EIS runs for 60 days after the publication of a formal public notice. *Id.* § 219.52(c)(6). For plan amendments that did not require the preparation of an EIS, the objection period runs for 45 days after the publication of the public notice. *Id.*

43.    A NFMA Forest Plan amendment, such as the Eastside Screens Amendment, that does not itself "create adverse effects of the strictly legal kind, that is, effects of a sort that traditionally would have qualified as harm" may not present an issue ripe for judicial review because a "[p]lan does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 232 U.S. 726, 733 (1998). Rather, individuals or groups seeking judicial review of provisions of a plan amendment must sometimes wait until the Forest Service approves a project that relies upon that plan to satisfy judicial ripeness concerns. *Id.* at 733-34. BMBP has waited, and the Forest Service has now relied upon the illegal Eastside Screens Amendment in approving the South Warner Project. This allows BMBP to challenge in this lawsuit the legality of both the illegal

amendment to the FWNF Forest Plan and the South Warner Project that relies upon that illegal plan amendment.

## Administrative Procedure Act (5 U.S.C. §§ 701-706)

44.     Section 702 of the APA, 5 U.S.C. §702, provides a private cause of action to any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."

45.     Under section 704 of the APA, 5 U.S.C. § 704, a "final agency action" is reviewable. A final agency action is one that marks the consummation of the agency's decision-making process and one by which rights or obligations have been determined or from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 77-78 (1997).

46.     Under section 706 of the APA, 5 U.S.C. § 706, "[t]he reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (D) without observance of procedure required by law …."

47.     NEPA and NFMA do not contain specific judicial review provisions, and the Forest Service's actions governed by those statutes, such as the South Warner Project Decision Memo and the Eastside Screens Amendment DN/FONSI, are therefore subject to judicial review under the APA.

## ADDITIONAL FACTS GIVING RISE TO THE PLAINTIFF'S CASUE OF ACTION

## NFMA

48.     In 1992, monitoring reports for national forests in eastern Oregon and Washington expressed concern over forest conditions due to over-logging on the landscape. *See* U.S. Forest Service, *Environmental Assessment for the Continuation of Interim Management Direction Establishing Riparian, Ecosystem and Wildlife Standards for Timber Sales* at 9-11 (1994) ("1994 Screens EA"). These reports acknowledged that "excess timber cutting can conflict with promoting forest health" and that "the number of trees available for nesting has been declining,"

as have wildlife numbers. *Id.* After additional analysis, over 113 scientists concluded that

"eastside ecosystems are stressed and unstable" because of "management practices of this

century that have reduced diversity … and long-term productivity." *Id.* at 11. One specific

problem the scientists identified was an absence of large trees and large dead trees, sometimes

called snags, that provide essential habitat for many native wildlife species, such as the pileated

woodpecker and the American marten. *Id.*

49.    Because of these scientific findings, in 1994, the Regional Forester issued an

Interim Direction that established new standards for timer sales in Eastside forests, including the

FWNF. *Id.* at 1; U.S. Forest Service, *Decision Notice for the Continuation of the Interim*

*Management Direction Establishing Riparian, Ecosystem and Wildlife Standards for Timber*

*Sales* at 1 (1994) ("1994 Screens DN"). In addition to other requirements, the Eastside Screens'

interim wildlife standard prohibits logging "live trees" ≥21" DBH (the "21" Rule") and logging

within LOS stands below HRV. 1994 Screens EA App. B at B-7. This direction is intentionally

restrictive and requires the Eastside forests to use the standards to "screen" timber sales, 1994

Screens DN at 2, "to preserve future planning options until completion of the [regional] Eastside

EIS," which will assess "risks to species, ecological groupings of species, and habitats" and

"provide long term direction for ecosystem management" in the Eastside forests. 1994 Screens

EA at 2. In 1994 and 1995, the Regional Forester extended a revised version of the Screens, with

the 21" Rule still in place, pending completion of the regional Eastside EIS. 1994 Screens DN at

4; U.S. Forest Service, *Decision Notice for the Revised Continuation of Interim Management*

*Direction Establishing Riparian, Ecosystem and Wildlife Standards for Timber Sales* at 4 (1995).

This interim direction remained in effect as revised in 1995 until 2021, when the Eastside

Screens Amendment initially proposed by Forest Supervisor for the Ochoco National Forest

Shane Jeffries was later illegally signed by then-Under Secretary for Natural Resources and

Environment James Hubbard in an attempt to circumvent the pre-decisional administrative

review process detailed at 36 C.F.R. § 219, Subpart B.

50.     The Eastside Screens Amendment process began in 2020 when the Forest Service published a "Notice to initiate a land management plan amendment and notice of availability" in the Federal Register. 85 Fed. Reg. 48,500-01 (Aug. 11, 2020). Describing the proposed action, the Notice explained "[t]he Forest Service is proposing to replace the 21" standard with a guideline that emphasizes recruitment of old trees and large trees" as well as assessing an "adaptive management component." *Id.* "The Responsible Official for this amendment is Ochoco Forest Supervisor, Shane Jeffries." *Id.* The Federal Register Notice shared that the Preliminary EA and other related documents were available for comment on the project website, with comments required to be submitted by September 10, 2020, and also noted that "[t]he EA is subject to Forest Service regulation 36 CFR 219, Subpart B, known as the administrative review, or objection, process." *Id.*

51.     A subsequent Federal Register "Notice to extend the public comment period for land management plan amendment" was published by the Forest Service on September 8, 2020, extending the public comment period until October 13, 2020 and again noting that "[t]his EA is subject to Forest Service regulation 36 CFR 219, Subpart B, known as the administrative review, or objection, process. 85 Fed. Reg. 55,409 (Sept. 8, 2020). This Notice did not name a Responsible Official, but did note that any hardcopy comments must be submitted to "Shane Jeffries, Forest Supervisor, Ochoco National Forest." *Id.*

52.     The Preliminary EA referred to in these Federal Register Notices was published in August 2020, and again listed Shane Jeffries, Forest Supervisor for the Ochoco National Forest as the Responsible Official, as delegated by the Regional Forester. *Forest Management Direction for Large Diameter Trees in Eastern Oregon EA-Preliminary* at 1 (2020) ("Eastside Screens Amendment PEA"). The PEA describes the proposed change from the 21" Rule or standard to the new guideline with adaptive management, specifying that "[t]he intent is still to maintain and/or enhance LOS components in stands subject to timber harvest as much as possible," but

suggests raising the limit for what qualifies as a "large tree" for grand fir, white fir, and Douglas fir from 21" DBH to 30" DBH.[3]

53.     BMBP submitted substantive comments on the Eastside Screens Amendment PEA on October 13, 2020, faulting the Forest Service for failing to properly scope the plan amendment under NEPA and provide the public an opportunity to comment on the scoping analysis, along with their failure to mention any scientific studies on the effects of climate change on the Eastside landscape or its general lack of large trees and snags available for wildlife habitat. BMBP Eastside Screens Amendment Comment at 35-39. The comment cites 36 C.F.R. § 219.52, which requires that the responsible official for a plan amendment give public notice if an amendment is subject to the objection process during scoping and in the EA or EIS. *Id.* at 36. BMBP's comment also raises the issue regarding the Forest Service's decision to replace the existing Eastside Screens' 21" Rule *standard* with a voluntary *guideline* that allows for the logging of trees greater than 21" DBH. *Id.* at 39. Guidelines inherently provide more discretion to the agencies implementing them, ultimately making federal agencies like the Forest Service less accountable to the people whose forests they are required to protect and manage to provide habitat for all native species.

54.     Following the public comment period that ended on October 13, 2020, the Forest Service published the final EA and DN/FONSI for the Eastside Screens Amendment on January 12, 2021. This FEA was vastly different from the PEA, both in terms of the length of analysis and the final amendments approved. The Eastside Screens PEA is 174 pages including citations and appendices. The FEA, which was not subject to objection after publishing, is 246 pages including citations and appendices, representing over 70 pages of analysis—including much more analysis on the environmental impacts to wildlife and plant species in Project area—that BMBP did not have a chance to review and comment on before a final administrative decision was made. Additionally, the approved amended guideline replaces section d(2) of the Screens'

---

[3] The final Decision Notice for the Eastside Screens Amendment applies the new 30" guideline only to grand and white fir. Eastside Screens Amendment DN/FONSI at 4.

interim wildlife standard with a guideline that allows for the logging of grand and white fir up to 30" DBH, another change from the PEA, which originally included Douglas fir in the large tree guideline. This voluntary guideline gives an enormous amount of discretion to an agency—one that has continually targeted large fir species on the Eastern landscape for overlogging for over a century, *see* BMBP Eastside Screens Amendment Comment at 46—to cut larger and larger trees, and it was approved illegally without the public input that NFMA calls for. This amendment would allow Forest Service officials to approve the logging of large firs in forests that still lack sufficient large trees that provide essential habitat for numerous wildlife species, and that is exactly what occurred when the Forest Service approved the South Warner project, as evidenced by the South Warner Project's silvicultural prescription. Failing to give interested parties the opportunity to comment on these changes and access independent Forest Service review is not only contrary to the Service's own regulations, but also arbitrary and capricious in violation of the APA. 5 U.S.C. § 706(2)(A).

55.     The Eastside Screens EA and DN/FONSI, published on the same day, for the first time in, listed then-Under Secretary for Natural Resources and Environment James Hubbard as the Responsible Official for this amendment. Eastside Screens Amendment EA at 2, 11; Eastside Screens Amendment DN/FONSI at 2, 18. The DN/FONSI goes on to state, "[i]n accordance with the regulation at 36 CFR 219.51(b), this plan amendment is not subject to objection (administrative review) because it is signed by the Under Secretary for Natural Resources and Environment. As such, this decision is the final administrative determination by the U.S. Department of Agriculture." Eastside Screens Amendment DN/FONSI at 13. This is a clear abuse of the objection process exception for plan amendments proposed by the Under Secretary found in 36 C.F.R. § 219.51(b), as not only does the regulation require that the Under Secretary be the one that *proposed* the amendment as opposed to just *signed* it, this decision also reneges on the variety of Federal Register notices, discussed above in ¶¶ 50-51, that clearly establish that this amendment was subject to the objection process of 36 C.F.R. § 219, Subpart B. This bait-and-switch is an obvious attempt to stymie public discourse and participation in the plan

amendment process for a scientifically controversial agency decision and runs contrary to the Forest Services' own regulations, and therefore is arbitrary, capricious, and an abuse of agency discretion in violation of the APA. 5 U.S.C. § 702(2)(A) & (D).

56.    Additionally, 36 C.F.R. § 219.51(d) requires that, when a plan amendment is not subject to the objection process, the responsible official "shall include an explanation with the signed decision document." The entirety of the Under Secretary's "explanation" as to why this amendment is not subject to the objection process is encapsulated in thirteen words: "because it is signed by the Under Secretary for Natural Resources and Environment." Eastside Screens Amendment DN/FONSI at 13. This "explanation," which is nothing more than a restatement of the regulatory language at 36 C.F.R. §219.51(d), not only fails to explain why this adversely impactful amendment to a long-standing forest management standard should not be subject to the objection process, but is also an abuse of discretion as to the implementation of the Forest Service's NFMA objection regulations, and is therefore in violation of the APA. 5 U.S.C. § 706(2)(A) & (D).

57.    BMBP and its members have been harmed by these violations of Forest Service procedures required by law. By initially leading interested parties on with Federal Register Notices that this amendment would be subject to the Service's objection process, the Forest Service prevented BMBP from having its concerns heard to a satisfactory extent and stopped BMBP from introducing independent scientific findings regarding the impacts of such an amendment on the Eastside ecosystem into the administrative record for this decision. This includes hampering not only BMBP's ability to comment on and object to a vastly different FEA, but also BMBP's ability to view, provide comments on, and object to the Draft DN/FONSI that is usually published alongside an FEA for the objection process. Because of the Service's failure to follow proper administrative review procedures, BMBP did not get a chance to provide public comments on a draft administrative decision before it was approved and was able to be implemented on the National Forests that BMBP strives to protect.

58.    The Forest Service began scoping for the South Warner Project on June 28, 2021, seeking input from the public for a project that includes approximately 69,567 acres of forest management activities on Forest Service land on the FWNF. South Warner Scoping Letter at 1-2. The scoping letter included notice of the potential for "commercial thinning" efforts on approximately 16,000 acres, which would include the logging of "white fir up to 30-inches DBH." *Id.* at 2. Scoping comments were required to be filed with the agency by July 19, 2021. *Id.* at 1. This scoping letter was signed by Michael Ramsey, District Ranger for the Lakeview District of the FWNF. *Id.* at 3.

59.    BMBP submitted scoping comments on the South Warner Project on July 19, 2021, raising numerous issues with the South Warner Project including the Project's reliance on the Eastside Screens Amendment to allow for the logging of white fir up to 30" DBH and the proposed approval of the Project using categorical exclusion, foregoing further environmental analysis on the first project to implement the highly controversial Eastside Screens Amendment. BMBP South Warner Scoping Comment at 3.

60.    The Forest Service published its Decision Memo for the South Warner Project on December 27, 2021. South Warner Decision Memo at 15. The Decision Memo confirms that forest management activities will indeed be spread across the 69,567 acres of the Project area, including commercial thinning on 16,000 acres outside of inventoried roadless areas. *Id.* at 3-4. The Decision Memo explains that the Service would be logging "larger [white fir] (<30") and other species to reduce competition around larger trees" like the "shade intolerant" ponderosa pine. *Id.* at 4.

61.    The Decision Memo also notes that the South Warner Project is "categorically excluded from documentation" in either an EIS or EA, relying on 36 C.F.R. §§ 220.6(e)(6) & 220(e)(18). *Id.* at 11. District Ranger Ramsey reviewed the project and found "no extraordinary circumstances affecting resource conditions … that warrant further analysis and documentation in an" EIS or EA. *Id.* at 12; *see* 36 C.F.R. § 220.6.

COMPLAINT FOR VACATUR, INJUNCTIVE, AND DECLARATORY RELIEF            19

62.    The South Warner Project Decision Memo "is not subject to administrative review" under 36 C.F.R. § 219, Subpart B, and as such, represents the final administrative determination for this Project.

63.    The South Warner Project and its reliance on the illegally approved Eastside Screens Amendment is legally untenable. Because the Eastside Screens amendment to the FWNF was illegally approved, the 21" Rule still applies to forest management projects on the FWNF. Therefore, the South Warner Project's silvicultural prescription calling for the logging of white fir up to 30" on the South Warner Project area is in violation of the FWNF Forest Plan, and therefore in violation of NFMA itself. 16 U.S.C. § 1604(i). The Forest Service's flagrant violations of its own public input and administrative review regulations in the approval of the Eastside Screens Amendment taint any project that relies upon it to log old and large grand and white fir up to 30" DBH. This project should not be allowed to go forward in its current form.

## PLAINTIFF'S CLAIM FOR RELIEF

### (Violations of NFMA and APA by the Forest Service)

64.    Plaintiff realleges and incorporates by reference all preceding paragraphs into each of the counts set forth below.

### COUNT ONE

65.    NFMA and the Forest Service's implementing regulations provide for the clear importance of public input and independent administrative review in the implementation of forest plans, plan amendments, and plan revisions. 16 U.S.C. § 1604(d); 36 C.F.R. § 219, Subpart B. The Service's approval of the Eastside Screens Amendment—signed, but clearly not proposed, by then-Under Secretary Hubbard—without providing for an objection process is a flagrant announcement to the nation that the Forest Service is not interested public input and independent scientific review of its actions. The Service's violation of 36 C.F.R. § 219.51(b) by forgoing the objection process after announcing it in observance of 36 C.F.R. § 219.52 is arbitrary and capricious agency actions not in accordance with the law in violation of NFMA and APA. 5 U.S.C. §§ 706(2)(A) & (D).

## COUNT TWO

66.    The Forest Service and the Under Secretary for Natural Resources and Environment failed to provide an explanation as to why the Eastside Screens Amendment would not be subject this amendment to the objection process, in violation of 36 C.F.R. § 219.51(d). Any explanation as to the reasoning to not subject a Forest Plan amendment that amends a long-standing standard across six national forests to the objection process needs to go beyond simply repeating the regulation it is relying on. The failure to provide such an explanation is arbitrary and capricious, not in accordance with the law, and not in observance of procedure required by law in violation of NFMA and the APA. 5 U.S.C. §§ 706(2)(A) & (D).

## COUNT THREE

67.    One of NFMA's goals is comprehensive management of the National Forest System. Pursuant to this goal, NFMA requires the Forest Service to make an integrated forest management plan for each national forest. 16 U.S.C. §§ 1604(b) & (f). Any actions taken on a forest must be consistent with this management plan. *Id.* § 1604(i).  Forest plans may be amended legally, *id.* §§ 1604(d) & (f), but this has not occurred in this instance. Because the South Warner Project calls for the logging of trees ≥21" DBH, in violation of the FWNF as amended by the legally valid 1995 Eastside Screens, Defendants' approval of the South Warner Project is arbitrary and capricious in violation of the NFMA and the APA. 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

A.   Declare that the Forest Service's amendment to the FWNF Forest Plan, the 2021 Eastside Screens Amendment, violates NFMA and is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and/or without observance of procedure required by law under the APA. 5 U.S.C. § 706(2)(A) & (D);

B.   Vacate and set aside the 2021 Eastside Screens Amendment to the FWNF Forest Plan as an illegal agency action under the APA;

C.  Enjoin the Forest Service from implementing the FWNF Forest Plan, as amended by the 2021 Eastside Screens Amendment Decision Notice, until the agency has complied with NFMA;

D.  Declare that the Forest Service's authorization of the South Warner Project in reliance on the illegal Eastside Screens Amendment violates NFMA and the unamended FWNF Forest Plan (which includes the 1995 Eastside Screens restrictions) and is arbitrary, capricious, an abuse of discretion, and/or not in accordance with law under the APA. 5 U.S.C. § 706(A)(2);

E.  Vacate and set aside the Decision Memo for the South Warner Project as an illegal agency action under the APA;

F.  Enter appropriate preliminary and permanent injunctive relief to ensure that Defendants comply with NFMA, and specifically to ensure that Defendants and their agents take no further actions toward proceeding with the challenged Eastside Screens Amendment to the FWNF Forest Plan and South Warner Project until they have complied with NFMA;

G.  Award Plaintiffs their reasonable costs litigation expenses and attorney fees associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 et seq.; and

H.  Grant such further relief as the Court deems just and proper.

Dated this 6th day of October, 2022.

s/Tom Buchele
Tom Buchele, OSB No. 081560
Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Tel: 503-768-6736
Fax: 503-768-6642
Email: tbuchele@lclark.edu

*Attorney for Plaintiff*

COMPLAINT FOR VACATUR, INJUNCTIVE, AND DECLARATORY RELIEF          22