Thomas Buchele, OSB No. 081560
Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Tel: 503-768-6736
Fax: 503-768-6642
Email: tbuchele@lclark.edu

Austin Starnes, OSB No. 224970
Blue Mountains Biodiversity Project
4520 SW View Point Ter Uppr
Portland, OR 97239
Tel: 317-964-3776
Email: austin@bmbp.org

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **BLUE MOUNTAINS BIODIVERISTY PROJECT,** an Oregon nonprofit corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>**HOMER WILKES**, in his official capacity as Undersecretary for Natural Resources and Environment, United States Department of Agriculture, et al.<br><br>       Defendants. | Case No. 1:22-cv-01500-CL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................ ii

TABLE OF ACRONYMS ........................................................................................ iv

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL BACKGROUND .......................................................................4

III.    LEGAL BACKGROUND ............................................................................8

IV.     ARGUMENT .............................................................................................10

        A.      BMBP has standing to seek vacatur of entire amendment.................11

                i.      BMBP has standing to challenge the 2021 Eastside Screens Amendment based
                        solely on the procedural injury at the time of its adoption. ............................12

                ii.     BMBP had standing at the outset based on both its procedural injury and
                        injuries caused by implementation through the South Warner Project. ...........14

        B.      This Court can still provide effectual relief for BMBP's concrete injuries, and
                therefore BMBP's claims are not moot........................................................17

V.      CONCLUSION...........................................................................................22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. C.L. Union of Nevada v. Lomax*, 471 F.3d 1010 (9th Cir. 2006) ............................................11

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997) ...........................................................8

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971)............................20

*Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) ................................1, 9, 10, 17

*Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001) ......................11

*Davis v. FEC*, 554 U.S. 724 (2008) ..............................................................................................11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... *passim*

*Greater Hells Canyon Council v. Wilkes*, No. 24-3386, 2024 WL 4891002
  (9th Cir. Oct. 1, 2024) ............................................................................................................7

*Greater Hells Canyon v. Wilkes*, 790 F. Supp. 3d 1029 (D. Or. 2024)................................. *passim*

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)................................................11

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012)...........................................1, 9

*Lackey v. Stinnie*, 604 U.S. 192 (2025) .........................................................................................7

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................................................9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................8, 9

*Native Vill. Of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201 (9th Cir. 2021)....................1, 9, 17

*Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241 (9th Cir. 1988) .........................................................9

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998) .................................................12, 14, 21

*Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011).......................................... *passim*

**Statutes**

5 U.S.C. § 706(2)(A)......................................................................................................................5

5 U.S.C. § 706(2)(D)......................................................................................................................5

**Regulations**

36 C.F.R. § 219.51(b).....................................................................................................................5

36 C.F.R. § 219.51(d) ................................................................................................5

## Other Authority

First Amended Compl. (ECF No. 12), *Greater Hells Canyon v. Wilkes*, 2023 WL 6443562, No.
   2:22-cv-00859-HL (D. Or. Aug. 22, 2022) ............................................................5

FRCP 12(b)(1) ..................................................................................................1, 12

Local Rule 7-1(a) ......................................................................................................7

## TABLE OF ACRONYMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| BMBP | Blue Mountains Biodiversity Project |
| DBH | diameter at breast height |
| EIS | Environmental Impact Statement |
| FRCP | Federal Rules of Civil Procedure |
| FWNF | Fremont-Winema National Forest |
| NEPA | National Environmental Policy Act |
| NFMA | National Forest Management Act |

## I.  <u>INTRODUCTION</u>

Plaintiff Blue Mountains Biodiversity Project ("BMBP") currently faces what Defendants (or the "Forest Service") are claiming is a Federal Rules of Civil Procedure ("FRCP") 12(b)(1) Motion to Dismiss for lack of subject-matter jurisdiction, arguing that BMBP's case is moot. ECF No. 70 at 3. The Forest Service points to post-complaint factual and legal developments— the partial vacatur of the 2021 Eastside Screens Amendment in another case and their voluntary changes to the South Warner Project—as the factual predicate for its motion. While such post-complaint facts could at least theoretically support a jurisdictional challenge based on mootness, as a matter of law those facts cannot support an argument challenging BMBP's standing when it filed its complaint. However, throughout its Motion and brief, Defendants conflate the standards and associated burdens for the doctrines of standing and mootness.

Although the Forest Service incorrectly claims that BMBP's case is moot, part of that claim is based on their argument that "Plaintiff has not shown that its interests are harmed by the environmentally friendly portion of the Amendment that remains." *Id.* In effect, the Forest Service is trying to argue that—based on post-complaint facts—BMBP has not met its burden of establishing Article III standing. However, a plaintiff's burden of establishing standing is one that must be met "at the outset of litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). By the time mootness is a potential issue, often years into litigation, the "heavy burden" of establishing that "it is impossible for a court to grant any effectual relief whatever to the prevailing party" rests solely with the party asserting mootness. *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1208 (9th Cir. 2021) (citing *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted); *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001)). As BMBP explains below, Defendants have not and cannot meet this heavy burden.

BMBP's October 2022 Complaint alleges three counts of legal violations under the National Forest Management Act ("NFMA") and the Administrative Procedure Act ("APA"). ECF No. 1, at 21–22, ¶¶ 65–67. Counts One and Two directly challenge the illegal approval and adoption of the 2021 *Eastside Screens Amendment: Forest Management Direction for Large Diameter Trees in Eastern Oregon and Southeastern Washington* ("Eastside Screens Amendment" or "2021 Amendment") without the required pre-decisional administrative review ("objections") process and explanation. *Id.* Count Three challenges the implementation of the 2021 Amendment in the South Warner Habitat Restoration Project ("South Warner Project" or "Project"). *Id.*

The Forest Service's procedural violation in failing to hold the required objections period infects the entire amendment, rendering the entire amendment illegal. Beyond the procedural harms, the "snag and green tree retention" portions of the 2021 Eastside Screens Amendment cause the same concrete injury to BMBP's interests in the ecological health of the Fremont-Winema National Forest as the Amendment's now-vacated guideline that authorizes the logging of certain tree species up to 30" diameter at breast height ("DBH"): both parts of the Amendment replace unambiguously mandatory and protective provisions with non-mandatory and vague provisions that give the Forest Service the discretion to approve logging projects that log both large trees and large snags. Subsequently, the Forest Service's implementation of the illegal Amendment in the South Warner project renders the Project illegal as well. The District of Oregon has yet to issue an order that fully redresses the injuries to BMBP's interests.

Despite Defendants' unsupported claims that the remaining portions of the 2021 Eastside Screens Amendment are "environmentally friendly," ECF No. 70 at 3, the 2021 Amendment—including the snag and green tree retention provisions—simply does not provide the same level

of mandatory ecological protection as the original Eastside Screens. The original snag and green tree provisions of the Eastside Screens note that:

> Most (if not all) wildlife species rely on moderate to high levels of snags and down logs for nesting, roosting, denning and feeding. Large down logs are a common and important component of most old and late structural forests. Past management practices have greatly reduced the number of large Snags and down logs in managed stands[.]

Buchele Decl., Ex. 2 at 11. With this understanding of the importance of abundant snag habitat, the original Screens' snag and green tree provisions required the Forest Service to "maintain snags and green tree replacement trees of ≥21 inches dbh ... *at 100% potential population levels of primary cavity excavators*." *Id.* (emphasis added). Because the required level of snags under the original language of the Screens is tied to the maximum potential population level of primary cavity excavators, in areas of the Fremont-Winema National Forest ("FWNF") where snag habitat was at a deficit, the Forest service would be required to not only protect existing large snags, but also actively recruit future large snags to meet the well-defined, brightline habitat standard.

In contrast, the snag and green tree retention provisions of the 2021 Amendment only actually require the Forest Service to:

> Maintain all snags > 20 inches (or whatever is the representative DBH of the overstory layer if it is less than 20 inches) OR complete a snag analysis using the best available science on species ecological requirements as applied through current snag tools, models, or other documented procedures to maintain or increase diverse snag composition, size, structure, and distribution (i.e. groups or clusters) for a diverse composition of wildlife species and ecological site conditions.

ECF No. 70-6 at 2 (emphasis in original). Although the provision begins by appearing to mandate the protection of all snags over 20" DBH, the use of the word "OR" makes that provision non-mandatory. *Id.* By allowing the Forest Service to instead prepare a vaguely defined "snag analysis ... to maintain or increase diverse snag composition, size, structure, and

distribution," this provision allows the Forest Service to authorize the logging of large snags and eliminates the original Screens' focus on protecting and increasing habitat for primary cavity excavators, which rely on large trees and snags. *Id.*[1] And, although not mentioned in Defendants' Motion, the Forest Service has tipped its hand regarding its intentions with the remaining snag and green tree retention provisions, with the Regional Forester issuing a guidance document in July 2025 indicating that the Forest Service intends to use these provisions to log large trees ≥21" DBH with impunity. *See* Buchele Decl., Ex. 1. The 2021 Amendment's snag and green tree retention provisions are not "environmentally friendly" provisions.

The Forest Service's procedural violations in failing to hold an objection process for the 2021 Eastside Screens Amendment saturate the entire amendment, infecting each provision of the Amendment equally and wholly and harming BMBP in exactly the same way. As such, BMBP, sees no legal or factual basis for one provision of this illegal amendment to be set aside while allowing another equally illegal provision to remain in the Forest Plans of eastern Oregon's national forests, including the FWNF. So long as the snag and green tree retention provisions of the 2021 Eastside Screens Amendment remain part of the FWNF's Forest Plan, BMBP's case, which seeks vacatur of the entire amendment, cannot be moot.

## II.     FACTUAL BACKGROUND

BMBP initiated the present litigation on October 6, 2022, alleging three counts of legal violations of NFMA and the APA. ECF No. 1 at 21–22, ¶¶ 65–67. Defendants have not yet filed a responsive pleading to BMBP's Complaint. Defendants did file a Notice of Related Case, ECF No. 23, along with its first Motion to Dismiss on January 17, 2023. ECF No. 24. Defendants'

---

[1] The 2021 Amendment replaces the original Screens' specific focus on primary cavity excavator species with a far vaguer focus on "a diverse composition of wildlife species." ECF No. 70-6 at 2.

Motion to Dismiss was denied by a March 29, 2024 order from Judge Aiken, upholding an earlier Finding and Recommendation by Magistrate Judge Clarke that BMBP "has plausibly alleged a violation of 36 C.F.R. § 219.51(b) and (d) and 5 U.S.C. §§ 706(2)(A) & (D)[.]" ECF No. 42 at 2.

On the same day, in a separate case, the District of Oregon ruled that the Forest Service's adoption of the 2021 Eastside Screens Amendment without holding an objection period, *inter alia*, rendered the decision illegal. *Greater Hells Canyon v. Wilkes*, 790 F. Supp. 3d 1029, 1039 (D. Or. 2024).[2] Contrary to Defendants' assertion in its Motion to Dismiss, ECF No. 70 at 6, plaintiffs' claims under NFMA in the *Greater Hells Canyon* included a challenge to the entire 2021 Eastside Screens Amendment, including the snag and green tree retention portions of the amendment. First Amended Compl. (ECF No. 12) ¶¶ 233–41 & 255–56, *Greater Hells Canyon v. Wilkes*, 2023 WL 6443562, No. 2:22-cv-00859-HL (D. Or. Aug. 22, 2022) (challenging the flawed and illegal process by which the Forest Service adopted the entire 2021 Eastside Screens Amendment and asking the Court to set aside the entire 2021 Eastside Screens Amendment). Judge Aiken's order in *Greater Hells Canyon* held that the procedures used to approve the entire amendment were illegal. 790 F. Supp. 3d at 1039. In the remedy portion of her order, however, she vacated the Forest Service's Environmental Assessment and Finding of No Significant Impact for the 2021 Amendment, as well as the Amendment's changes to the Screens' mandatory protections for large trees, but allowed the snag and green tree retention provisions of the 2021

---

[2] In that order, Judge Aiken adopted an earlier Finding and Recommendation from Magistrate Judge Hallman. Magistrate Hallman's F&R expressly relied upon Judge Clarke's earlier F&R in this case when ruling on the plaintiffs' claim in that case that the 2021 Amendment was illegally approved without allowing for an objection period. *Greater Hells Canyon*, 790 F. Supp. 3d at 1047.

Amendment to remain a part of the region's national forests'—including the FWNF's— Land and Resource Management Plans ("Forest Plans"). *Id.*

Specifically, Judge Aiken adopted the Findings and Recommendations of Magistrate Judge Hallman, which granted plaintiffs' Motion for Summary Judgment, *id.* at 1038–39, and ordered the following relief:

> ### DECLARATION
> 1. The Forest Service violated National Environmental Policy Act by failing to conduct an Environmental Impact Statement or taking a hard look at the effect of the Amendment as a guideline and on aquatic species
> 2. The Forest Service violated the National Forest Management Act by failing to hold the objection period.
> 3. The Forest Service violated the Endangered Species Act by failing to address the effects of the Amendment on aquatic species.
> ### INJUNCTION
> 1. Defendant shall prepare an Environmental Impact Statement for the Amendment.
> 2. The Forest Service's Environmental Assessment and Finding of No Significant Impact is VACATED.
> 3. The Forest Service shall maintain the "snag and green tree retention" portions of the Amendment, which replaced Sections 4(a) and 4(a)(1) of the Eastside Screens, while the Service prepares an Environmental Impact Statement.

*Id.* at 1039.[3]

BMBP was not a party to that case, and the relief granted in Judge Aiken's order falls short of the relief requested in BMBP's complaint in this case: vacatur of the entire 2021 Eastside Screens Amendment. ECF No. 1 at 22. Further, nothing in Judge Aiken's order could be construed as applying retroactively to site-specific Forest Service projects that had already approved implementation of the illegal amendment. *Greater Hells Canyon*, 790 F. Supp. 3d at 1039. In that case, the plaintiffs did not challenge—and Judge Aiken did not vacate or enjoin—

---

[3] Although labeled as the second and third entries under the "INJUNCTION" header, the effect of the relief ordered is more similar to a partial vacatur of the 2021 Eastside Screens Amendment.

the approval or implementation of the illegal 2021 Amendment in any site-specific Forest
Service project, including the South Warner Project.

Defendants in *Greater Hells Canyon* subsequently filed a Notice of Appeal to the Ninth
Circuit Court of Appeals before voluntarily dismissing their appeal on October 1, 2024. *Greater
Hells Canyon Council v. Wilkes*, No. 24-3386, 2024 WL 4891002 (9th Cir. Oct. 1, 2024). After
defendants in *Greater Hells Canyon* dismissed their appeal, BMBP began settlement and fees
negotiations with Defendants. *See* ECF Nos. 46, 48, 50 (noting that parties will need to consider
any potential appeal in *Greater Hells Canyon* before "planning the course of the remainder of
this case.") and ECF Nos. 52, 54 (alerting the Court that parties are attempting to settle this
case). During this time period, on December 16, 2024, the Forest Service published a voluntary
amendment to the South Warner Project Decision Memo to remove the authorization of logging
of large trees greater than or equal to 21" DBH. ECF No. 70-2. Ostensibly good-faith—if slow-
to-progress—settlement and fees negotiations continued through early December 2025 until
counsel for Defendants alerted counsel for BMBP that Defendants planned to move for dismissal
of BMBP's case on the basis of mootness.[4] *See* ECF No. 68.

During conferral on the present Motion to Dismiss as required by Local Rule 7-1(a),
counsel for BMBP brought to the attention of and emailed a PDF copy to counsel for Defendants
a July 15, 2025 Regional Forester guidance document ("2025 Screens Guidance") offering
direction on the implementation of the Eastside Screens post–*Greater Hells Canyon*. Buchele

---

[4] This situation raises parallels to the risk, discussed in a 2025 Supreme Court case, that could
arise in some contexts "that government defendants [unsuccessful in earlier stages of litigation]
will strategically moot litigation rather than risk a fee award were they to ultimately lose on the
merits." *Lackey v. Stinnie*, 604 U.S. 192, 204 (2025). In that case, Chief Justice Roberts
emphasized that the "formidable" burden Defendants carry under the doctrine of mootness would
alleviate these concerns. *Id.* (citing *Laidlaw*, 528 U.S. at 190)

Decl., Ex. 1. This guidance document concludes that, as the Forest Service interprets the current state of the Eastside Screens—which now consists of the original Screens' mandate protecting trees ≥21" DBH and the 2021 Amendment's snag and green tree retention provisions—"there is no need to propose a site-specific, project-level plan amendment to remove trees 21-inches and larger because you are implementing the plan direction that is currently in effect." *Id.* Despite counsel for BMBP raising concerns about how this extremely relevant 2025 Screens Guidance may affect the Defendants' claims of mootness during conferral, Defendants made no mention of it in their Motion to Dismiss.

### III.    LEGAL BACKGROUND

As a preliminary matter, in alleging that BMBP has not—and cannot—establish injury from the snag and green tree retention provisions of the 2021 Eastside Screens Amendment, Defendants confuse the standards for standing and mootness in a motion to dismiss ostensibly for mootness. ECF 70 at 3, 10–11. Further, Defendants fail to provide the Court with an accurate view of modern-day mootness doctrine and associated jurisdictional challenges. Accordingly, Plaintiff submits the following regarding the appropriate standard of review.

The doctrines of standing and mootness can both be traced back to the Constitution's Article III case-or-controversy limitation on federal jurisdiction. *Laidlaw*, 528 U.S. at 180. However, modern jurisprudence acknowledges that mootness is not simply "the doctrine of standing set in a time frame." *Id.* at 170. Although "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997), after litigation has been initiated, the burden of establishing federal jurisdiction (or lack thereof) shifts from the plaintiff to the defendant. *Laidlaw*, 528 U.S. at 170. "[A]t the outset of litigation," the burden of

establishing standing rests with the plaintiff, who must establish (1) injury in fact, (2) causation, and (3) redressability *Id.* at 180–81 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). Plaintiffs must establish "standing separately for each form of relief sought." *Id.* at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Addressing the difference between standing and mootness doctrines, the *Laidlaw* Court notes:

> Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal.

*Id*. at 191–92.

And while it is true that "[t]he case or controversy requirement of Article III … deprives federal courts of jurisdiction to hear moot cases," *Native Vill.*, 9 F.4th at 1208 (citation omitted), establishing mootness is a high bar to clear for Defendants. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (citing *Knox*, 567 U.S. at 307 (internal quotation marks omitted in original)).

Moreover, the effectual relief available can be attenuated from, and need not necessarily be the same as, the primary relief requested. *See Cantrell*, 241 F.3d at 678. In *Cantrell*, birdwatchers seeking to safeguard habitat for protected and endangered bird species on a decommissioned naval base being considered for demolition and reuse challenged the adequacy of an environmental impact statement ("EIS") prepared by the Navy and state of California. *Id*. at 676–77. The district court granted defendants' motion to dismiss for lack of standing, and by the time plaintiff birdwatchers filed their appeal, the historic buildings and bird habitats on the naval base were destroyed. *Id*. at 677. In addressing appellees' claims of mootness on appeal, the Ninth Circuit determined that, "[a]s long as effective relief may still be available to counteract

the effects of the [ceased] violation, the controversy remains live and present." *Id.* at 678

(quoting *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988)). In *Cantrell*,

although the destruction of the naval base could not be remedied, effectual relief could

nonetheless be granted in the form of additional environmental review, in which defendants

could "consider alternatives to the current reuse plan, and develop ways to mitigate the damage

to the birds' habitat[.]" *Id.* at 678–79. Because such attenuated but effectual relief was still

available, the Ninth Circuit held that the demolition of the naval base did not render plaintiff's

claims moot. *Id.*

Defendant's burden in establishing the impossibility of effectual relief is a "particularly

heavy" one in cases alleging injury from agency procedural violations. *See id.* at 678. This is

because, in the context of the National Environmental Policy Act ("NEPA"), "if the completion

of the action challenged under NEPA is sufficient to render the case nonjusticiable, entities could

merely ignore the requirements of NEPA, build its structures before a case gets to court, and then

hide behind the mootness doctrine." *Id.* at 678 (internal quotations marks omitted). Although

there are no NEPA claims in the current litigation, it stands to reason that the same logic applies

to a procedural violation arising under any other federal statutory scheme. Otherwise, the Forest

Service could ignore the procedural requirements of their own regulations to approve a logging

project, cut down all the trees before a case can get to court, and then hide behind the mootness

doctrine. As BMBP explains below, Defendants have not and cannot meet the particularly heavy

burden that their motion requires.

## IV.     ARGUMENT

Because the Forest Service's Motion is confusing regarding what it is actually

challenging in terms of the Court's subject matter jurisdiction, BMBP will first demonstrate that

it had Article III standing when it filed its Complaint in 2022. Then it will show that the Forest

Plaintiff's Response to Defendants' Motion to Dismiss,
*Blue Mountains Biodiversity Project v. Wilkes, et al.*, Case No. 1:22-cv-01500-CL          10

Service cannot meet its heavy burden to undercut that initial standing by arguing mootness based on Judge Aiken's partial vacatur of the 2021 Eastside Screens Amendment more than two years later.

### A. BMBP has standing to seek vacatur of entire amendment.

"[S]tanding is evaluated by the facts that existed when the complaint was filed." *Am. C.L. Union of Nevada v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006); *see also Davis v. FEC*, 554 U.S. 724, 734 (2008) ("the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Laidlaw*, 528 U.S. at 185. When considering organizational standing:

> An association has standing to sue on behalf of its members when: (a) at least one of its members would otherwise have standing to sue in his or her own right; (b) the interests the association seeks to protect are germane to its organizational purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977).

BMBP seeks injunctive and declaratory relief, neither of which requires the participation of individual members. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001). Accordingly, BMBP must show that, when it filed its Complaint, at least one of its members has standing to sue and that the interests BMBP seeks to protect are germane to its purposes. An individual member has constitutional standing to sue where they "(1) ha[ve] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Laidlaw*, 528 U.S. at 180–181. When a plaintiff challenges the legal

procedure used for adopting a forest plan or an amendment thereto, the plaintiff's "procedural injury is complete after [a Forest Plan] has been adopted, so long as it is traceable to some action that will affect the plaintiff's interests." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1179 (9th Cir. 2011). The holding and reasoning of *Sierra Forest Legacy* controls here and instructs that BMBP had standing when it filed its Complaint in 2022 challenging the 2021 Eastside Screens Amendment to the FWNF Forest Plan.[5]

### i. BMBP has standing to challenge the 2021 Eastside Screens Amendment based solely on the procedural injury at the time of its adoption.

*Sierra Forest Legacy* makes clear that a private group can have standing to challenge an amendment to a Forest Plan absent an implementing project. 646 F.3d at 1179–80. Additionally, this District Court has already applied *Sierra Forest Legacy* to the same Amendment at issue here in *Greater Hells Canyon,* finding that all of the plaintiffs' procedural challenges were ripe when the alleged procedural failure occurred. 790 F. Supp. 3d at 1046.

In *Sierra Forest Legacy*, the Ninth Circuit addressed standing to bring a facial procedural challenge to a land-management framework governing national forest management decisions across a large landscape. 646 F.3d at 1179–80. The Forest Service argued that plaintiffs lacked standing because the challenged framework did not itself authorize on-the-ground logging and therefore did not create a sufficiently imminent injury. *Id.* at 1179 (discussing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998)). The Ninth Circuit rejected that argument and held that the absence of actual, specific project authorizations does not defeat standing where plaintiffs allege an immediate and final procedural violation at the plan level and where the clear

---

[5] Because Defendants have used declarations introducing facts outside the pleadings to support their jurisdictional challenge under FRCP 12(b)(1), BMBP also will not rest entirely on the allegations in its Complaint and submits declarations from three of its supporters setting forth facts supporting BMBP's standing at the time it filed its complaint.

intent and purpose of the plan amendment is to authorize future site-specific actions that would

affect the plaintiff's interests. *Id.* at 1179–80. Rather, "a procedural injury is complete after [a

Forest Plan] has been adopted, so long as it is traceable to some action that will affect the

plaintiff's interests." *Id.* at 1179. In that case, the traceable action was the Forest Service's

imminent implementation of forest management projects under the 2004 framework (a plan

amendment). *Id.* As the Ninth Circuit explained, the framework "permits the Forest Service to

implement forest management projects," and there was "no real possibility" that the agency

would decline to implement any projects under a framework governing millions of acres. *Id.* At

the same time, *Sierra Forest Legacy* also confirms that, where implementing projects exist, they

can further demonstrate concreteness and imminence without converting them into a prerequisite

for standing. *Id*. The court explained that "[e]ven if a specific application were required for

standing," it could take judicial notice of an implementing environmental assessment approving

intensive management consistent with the challenged framework. *Id*.

In short, *Sierra Forest Legacy* recognizes two paths to standing in a plan-amendment

case: (1) standing based on procedural injury upon adoption of the amendment itself, and (2)

standing further supported by (or independently shown through) implementation in an on-the-

ground project. *See id.* at 1179–80.

This District Court has already applied *Sierra Forest Legacy's* plan-amendment standing

principles to the same 2021 Eastside Screens Amendment at issue here and reached the same

conclusion. In *Greater Hells Canyon*, plaintiffs brought procedural challenges to the 2021

Amendment, including a claim that the Forest Service violated NFMA's objection procedures

when adopting the Amendment. *See* 790 F. Supp. 3d at 1042. In his Findings and

Recommendations, later fully adopted by the District Court, Magistrate Judge Hallman explained

that a plaintiff injured by the denial of required procedures "may complain of that failure at the time the failure takes place, for the claim can never get riper." *Id.* at 1046 (quoting *Ohio Forestry*, 523 U.S. at 737). The Court relied on *Sierra Forest Legacy* and reaffirmed that "a procedural injury is complete after [a Forest Plan] has been adopted, so long as it is traceable to some action that will affect the plaintiff's interests." *Id.* (quoting *Sierra Forest Legacy*, 646 F.3d at 1179). The Court concluded that the plaintiffs' NFMA objection-process claim and related procedural claims were ripe at the plan level and those plaintiffs had standing to bring such procedural challenges when the alleged procedural failures occurred. *Id.*

Thus, the District of Oregon has already confirmed that plaintiffs may challenge the Eastside Screens Amendment at the plan level based solely on a procedural violation, without also challenging a single site-specific implementing project.

### ii. BMBP had standing at the outset based on both its procedural injury and injuries caused by implementation through the South Warner Project.

BMBP had Article III standing when the complaint was filed. BMBP established standing in two ways. First, BMBP had concrete procedural injuries arising from Defendants' illegal adoption of the 2021 Eastside Screens Amendment sufficient to confer standing to challenge the Amendment. ECF No. 1 at 16–19, ¶¶ 50-57; *see Sierra Forest Legacy*, 646 F.3d at 1179–80. As was the case in *Sierra Forest Legacy,* the approval of the 2021 Eastside Screens Amendment permitted the Forest Service to immediately implement forest management projects incorporating the provisions of that illegal Amendment. And, as was also the case in *Sierra Forest Legacy,* there was no real possibility that the Defendants would not quickly authorize projects using the amendments non-mandatory provisions that are harmful to BMBP's protected interests. The Forest Service's approval of the South Warner Project that same year, relying on

both the large tree logging and snag and green tree retention provisions of 2021 Amendment,[6] underscores the actual and immediate threat to BMBP's (and its members') interests stemming from the Forest Service's procedural violations. *See* Bronstein Decl. ¶¶ 4, 13, 16; David Tvedt Decl. ¶¶ 5, 11, 14–15; Dee Tvedt Decl. ¶¶ 5, 14–15.

Second, even if a site-specific application were required to demonstrate standing, the South Warner Project would have satisfied this requirement at the outset of this litigation. The South Warner Project implemented the 2021 Amendment (both the large tree and snag and green tree retention provisions), and thus threatened concrete injuries to the professional, recreational, and aesthetic interests of BMBP's members in the specific area they use and intend to revisit. ECF No. 1 ¶¶ 5, 9–10; *see* Bronstein Decl. ¶¶ 5–12, 14, 16; David Tvedt Decl. ¶¶ 4, 6–12, 14–15; Dee Tvedt Decl. ¶¶ 6–12, 15. BMBP also has standing for each form of relief sought because vacatur of the Amendment would eliminate the unlawfully adopted plan-level direction, and vacatur of the portions of the South Warner decision implementing the Amendment would prevent Defendants from applying that direction on the ground.

BMBP has adequately alleged and proven via its members' declarations that it suffers concrete injury as a result of Defendants' adoption and implementation of the 2021 Eastside Screens Amendment. BMBP's members regularly recreate in and derive aesthetic enjoyment from the Fremont-Winema National Forest and the Warner Mountain range, including the South Warner Habitat Restoration Project area, and they now testify in their declarations that the Amendment's replacement of mandatory protective standards with entirely discretionary

---

[6] Defendants' declarations make it clear that the South Warner Project was designed from the start to implement the entirety of the 2021 Eastside Screens Amendment, not just the provision expressly authorizing large tree logging. *See* ECF No. 70-3, ¶¶ 3 & 5; ECF No. 70-4, ¶¶ 5–9.

standards increases the likelihood of large-tree and snag removal in the forests they use. *See, e.g.*, David Tvedt Decl. ¶ 11 ("[T]he increased discretion in the management of ecologically important large tree and snag habitat provided by the 2021 Eastside Screens Amendment increases the chance of the Forest Service approving logging projects that will degrade the landscape, thus reducing my recreational enjoyment of the South Warner project area, the Fremont-Winema National Forest, and the national forests of eastern Oregon generally."); Dee Tvedt Decl. ¶ 12 (stating that the South Warner Project's proposed logging "will negatively impact my use and enjoyment of this area irreparably," and that "the discretion provided by the snag and green tree retention portions of the 2021 Eastside Screens amendment increases the potential for ecologically harmful snag management[.]").

BMBP's members specifically testify that the 2021 Amendment's change to large tree and snag protections harms their ability to enjoy the forests they visit. *See* Dee Tvedt Decl. ¶¶ 5, 12. BMBP's supporters further testify that the Amendment's adoption threatens the forest conditions they seek out for recreation and enjoyment. Bronstein Decl. ¶ 11 ("My aesthetic enjoyment while recreating in this area will be negatively impacted in an irreversible manner as a result of the implementation of the provisions of the 2021 Eastside Screens amendment[.]"). These aesthetic and recreational harms are concrete, particularized, and imminent; are fairly traceable to Defendants' procedural failure in adopting the Amendment and in its application in South Warner; and would be redressed by an order setting aside the entire 2021 Eastside Screens Amendment and enjoining its implementation.

These facts establish (1) concrete injury-in-fact to BMBP and its members' recreational and aesthetic interests, (2) traceability to Defendants' adoption and implementation of the 2021 Amendment, and (3) redressability. Finally, this conclusion accords with the Ninth Circuit's

decision in *Sierra Forest Legacy* and the District of Oregon's prior decision addressing the same Amendment: BMBP's procedural challenges to the 2021 Eastside Screens Amendment are ripe for adjudication at the time of adoption and do not require a site-specific implementing project. *Sierra Forest Legacy*, 646 F.3d at 1179–80; *Greater Hells Canyon*, 790 F. Supp. 3d at 1046.

### B.  This Court can still provide effectual relief for BMBP's concrete injuries, and therefore BMBP's claims are not moot.

As long as any provision of the illegal 2021 Eastside Screens Amendment remains a part of the FWNF Forest Plan, this Court can provide effectual relief for the injuries to BMBP's interests, rendering its claims not moot and still ripe for adjudication. As discussed above, BMBP established standing at the outset of the present litigation to seek vacatur of the entire 2021 Eastside Screens Amendment. Therefore, the burden now rests with Defendants to establish that it is "impossible" for this Court to provide "any effectual relief whatever" to BMBP. *Native Vill.*, 9 F.4th at 1208. Defendants have not, and cannot, meet this "particularly heavy burden." *Cantrell*, 241 F.3d at 678.

Defendants claim that "[t]he challenged Amendment has been almost entirely vacated and enjoined, and the Project will not apply the vacated parts of the Amendment." ECF No. 70 at 10. BMBP does not disagree. However, Defendants' own assertion—that the "Amendment has been almost entirely vacated"—lays bare the fact that effectual relief is still available to BMBP. The Order in *Greater Hells Canyon* granted only partial vacatur of the illegal 2021 Eastside Screens Amendment, stating that the Forest Service "shall maintain the 'snag and green tree retention' portions of the Amendment … while [it] prepares an Environmental Impact Statement." 790 F.3d at 1039. Therefore, this Court can still set aside the snag and green tree provisions of 2021 Eastside Screens Amendment within the FWNF Forest Plan, as was requested by BMBP in its Complaint, providing such effectual relief. ECF No. 1 at 22.

Defendants, however, argue that the vacatur of the 2021 Amendment's snag and green tree retention provisions cannot be considered effectual relief because it is an "environmentally beneficial" amendment. ECF No. 70 at 11. This argument fails for two reasons. First, the Forest Service's characterization of the remaining portions of its 2021 Amendment as "environmentally beneficial" does not absolve Defendants of their procedural violations. BMBP established its standing to challenge the entire 2021 Amendment, including injury-in-fact stemming from Defendants' illegal procedures in its adoption at the outset of this litigation. *See* Sec. IV.A. *supra*. Defendants cite no support for their proposition that the Forest Service may ignore its own required procedures for the adoption of environmentally friendly Forest Plan amendments and avoid injury to interested stakeholder organizations such as BMBP because none exists.

Second, as explained above, the snag and green tree provisions of the 2021 Eastside Screens Amendment are objectively, based on the actual language used, not environmentally beneficial. The ambiguous language of the snag and green tree retention provisions provides the Forest Service with increased discretion in its implementation of these vitally important landscape scale habitat protections, increasing the potential for abuse and decreasing the accountability of a federal agency intended to serve the public. *See* ECF No. 70-6 at 2. *At best*, the 2021 Eastside Screens Amendment's snag and green tree retention provisions only require the Forest Service to maintain the current deficient levels of snag habitat. *Id.* Defendants have not explained how that standard renders the 2021 Amendment more "environmentally friendly" than the original Eastside Screens, which required increasing and maintaining large snag habitat to support "100% potential population levels for primary cavity excavator[]" species. Buchele Decl., Ex. 2 at 11. But in the 2021 Amendment's snag standard, the use of the word "or" followed by an alternative allowing for the potential removal of large snags so long as an

ambiguous "snag analysis" is completed means that there is no real mandatory prohibition on the removal of large snags. ECF No. 70-6 at 2. This surviving part of the 2021 Eastside Screens Amendment unambiguously gives the Forest Service the discretion to approve projects that remove large snags over 21" DBH.

And even if, on its face, the snag and green tree retention provisions of the 2021 Eastside Screens Amendment could somehow be interpreted as being environmentally friendly (by ignoring the use of the word "or"), what the Forest Service intends to do with those provisions is anything but. *See* Buchele Decl., Ex. 1. The Forest Service's July 2025 Screens Guidance makes it clear that the Forest Service believes that the snag and green tree retention portions of the amendment authorize the logging of large trees greater than or equal to 21" DBH with impunity:

> Th[e *Greater Hells Canyon*] order directed the Forest Service to maintain the "snag and green tree retention" portions of the 2021 Forest Plans Amendment: Forest Management Direction for Large Diameter Trees in Eastern Oregon and Southeastern Washington, which replaced Sections 6(d)(4)(a) and 6(d)(4)(a)(1) of the Eastside Screens, while the Forest Service prepares an Environmental Impact Statement. …
>
> When implementing this direction as written, *there is no need to propose a site-specific, project-level plan amendment to remove trees 21-inches and larger because you are implementing the plan direction that is currently in effect*.

*Id.* (emphasis added). Although BMBP disagrees with the legal interpretations and reasoning put forth in the 2025 Screens Guidance, the fact that Defendants are characterizing these provisions as environmentally friendly in their Motion while simultaneously planning to use it to log large trees on the FWNF and the region at large highlights the potential for abuse of this illegally adopted Amendment. As such, Defendants cannot even meet the burden of establishing that the portions of BMBP Complaint that specifically allege harm from large tree logging are moot. Vacatur of the entire 2021 Eastside Screens Amendment would provide effectual relief to these imminent harms.

Although acknowledged only briefly in a footnote, Defendants' mootness claim relies heavily on the argument that the "shall maintain" language of Judge Aiken's order must be read in such a way that no other litigation could produce a judgment contrary to that order, in effect, arguing collateral estoppel. ECF No. 70 at 11, n.3.[7] Otherwise, Defendants are left only with their improper and unsuccessful challenge to BMBP's well-established standing. However, BMBP was not a party to the *Greater Hells Canyon* litigation that resulted in that order, and thus is not collaterally estopped from seeking relief independent from the District of Oregon's Order in that case. *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971).

As the *Blonder-Tongue* Court explains:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

*Id.* Further, to the extent that effectual relief in the present litigation may conflict with the District of Oregon's order in *Greater Hells Canyon*, such discrepancies can easily be addressed by Judge Aiken once Magistrate Judge Clarke's Findings and Recommendations on the merits are submitted for review and adoption.[8]

---

[7] BMBP has seen no evidence that the Forest Service is actively working on the EIS also required by that Order, despite the Forest Service relying on the Order to defend what remains of the illegal 2021 Eastside Screens amendment. In using the "shall maintain" language to assert mootness in the present case, but not working to prepare an EIS the Forest Service is seeking piecemeal enforcement of parts of the District of Oregon's judgment that benefit them while ignoring the parts that don't.

[8] Significantly, the mootness standard Defendants must meet is a showing that no effectual relief is *possible*. There is no colorable argument that Judge Aiken's prior order, in a case where BMBP was not a party, can completely foreclose the Court in this case from at least considering BMBP's request for total vacatur after the Court addresses the merits of BMBP's claim.

In their Motion, Defendants make much out of their voluntary[9] amendment to the South Warner Project's Decision Memo to disallow any large tree logging originally approved under the authorization of the now-vacated portions of the 2021 Eastside Screens Amendment. ECF No. 70 at 9–12. Although BMBP disagrees that the voluntary cessation exception to mootness would not apply in the current case, it would make no difference in the outcome of Defendants' Motion to Dismiss. Since the outset of this litigation, BMBP has also asserted concrete injuries to its interests stemming from Defendants' procedural violations surrounding the illegal adoption of the 2021 Eastside Screens Amendment. ECF No. 1 at 19, ¶ 57. Moreover, BMBP has asserted that these procedural violations render the entire Amendment illegal. *Id.* at 21–22, ¶¶ 65–66. Therefore, from the outset of this litigation, BMBP has sought to vacate the entirety of the 2021 Eastside Screens Amendment. *Id.* at 22. This Court's ability to grant effectual relief for that continuing injury, by vacating what remains of the 2021 Amendment, is more than enough to defeat the Forest Service's mootness argument.

As such, the current or future state of the South Warner Project is of no consequence to the relief sought by BMBP in order to redress the harm stemming from the illegal adoption of the 2021 Eastside Screens Amendment. As this Court established in *Greater Hells Canyon*—in which plaintiffs challenged the 2021 Eastside Screens Amendment apart from any site-specific implementation of said amendment—[w]hen [a plaintiff is] injured by a failure to comply with … a procedure[, they] may complain of that failure at the time the failure takes place, for the claim can never get riper." 790 F. Supp. 3d at 1046 (citing *Ohio Forestry*, 523 U.S. at 733).

---

[9] As discussed above, Judge Aiken's Order in *Greater Hells Canyon* does not enjoin the Forest Service from implementing projects with large tree logging approved prior to the April 2024 judgment, nor does it vacate the Forest Service's prior approval of any site-specific timber sale. *See* 790 F. Supp. 3d at 1039.

Because BMBP established standing to seek vacatur of the 2021 Eastside Screens Amendment to the FWNF Forest Plan at the outset of this litigation, and because the FWNF Forest Plan still contains the snag and green tree retention portions of the 2021 Eastside Screens Amendment, the possibility of effectual relief for BMBP's procedural and actual injuries remains, and the Forest Service therefore cannot meet its heavy burden to prove that BMBP's case is moot.

## V.    CONCLUSION

For the foregoing reasons, because Defendants have not established that this Court cannot provide any effectual relief whatever to BMBP, they have failed to meet their burden to establish mootness. As such, Defendants' Motion to Dismiss must be denied.

Respectfully submitted this 22nd day of January, 2026.

*s/Thomas Buchele*_____
Thomas Buchele, OSB No. 081560
Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Tel: 503-768-6736
Fax: 503-768-6642
Email: tbuchele@lclark.edu

*s/ Austin Starnes*_____
Austin Starnes, OSB No. 224970
Blue Mountains Biodiversity Project
4520 SW View Point Ter Uppr
Portland, OR 97239
Tel: 317-964-3776
Email: austin@bmbp.org

*Attorneys for Plaintiff*