ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

HAYLEY A. CARPENTER (CA Bar No. 312611)
Trial Attorney
Natural Resources Section
150 M St. NE, Washington, D.C.
Washington, DC  20002
(202) 305-0242
hayley.carpenter@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# MEDFORD DIVISION

| | |
|---|---|
| **BLUE MOUNTAINS BIODIVERSITY PROJECT**, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**HOMER WILKES,** in his official capacity as Undersecretary for Natural Resources and Environment, United States Department of Agriculture; **JACQUELINE BUCHANAN**, in her official capacity as Regional Forester for Region 6; **JEFFREY MARSZAL**, in his official capacity as Forest Supervisor of the Ochoco National Forest; **DONALD "J.R." ASHCRAFT**, in his official capacity as District Ranger for the Lakeview Ranger District, Fremont Winema National Forest; and the **UNITED STATES FOREST SERVICE**,<br><br>Defendants. | Case No. 1:22-cv-01500-CL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

## I.     <u>INTRODUCTION</u>

This action is moot because the Court already vacated the Eastside Screens Amendment Plaintiff challenges in another case and ordered the Forest Service to maintain the provisions Plaintiff now ostensibly purports to care about. That the order in that case requires the Forest Service to maintain in place one small part of the Eastside Screens Amendment—the snag and green tree provisions—does not make this matter justiciable because the Court can order no relief as to those provisions, and Plaintiff has not shown it has an interest that will be harmed by those provisions or that vacatur of those provisions would redress any such harm. Therefore, the Court should dismiss this action for lack of jurisdiction.

## II.     <u>ARGUMENT</u>

Plaintiff claims that Defendants have confused mootness and standing, but the concepts are in fact very similar. "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (citation modified); *see also Coastal Env't Rts. Found. v. Naples Rest. Grp.*, LLC, 115 F.4th 1217, 1221-22 (9th Cir. 2024) (conditions establishing standing when lawsuit filed "must remain extant at all stages of review, not merely at the time the complaint is filed." (citation modified)). "A case that becomes moot at any point during the proceedings, including during an appeal, is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *Native Vill. of Nuiqsut v. BLM*, 9 F. 4th 1201, 1210 (9th Cir. 2021) (citation modified). Thus, the standing inquiry—whether a plaintiff has a redressable injury caused by the challenged conduct—if

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)      1

addressed based on facts that developed after the commencement of the litigation, is considered the mootness inquiry.

Plaintiff attempts to draw a stark line between standing and mootness, claiming that the idea of mootness being "standing set in a time frame" is outdated. Pl.'s Resp. in Opp. to Mot. to Dismiss 8, Dkt. No. 71 ("Pl.'s Br."). In truth, that "[m]ootness can be characterized as the doctrine of standing set in a time frame" is Ninth Circuit law and binding authority on this Court. *Cook Inlet Treaty Tribes*, 166 F.3d at 989 (citation modified). Plaintiff's only support for alleging that this holding is outdated is a case from only one year after *Cook Inlet Treaty Tribes* where the Court says that the "standing set in a time frame" language is "not comprehensive" because "a defendant claiming that its *voluntary compliance* moots a case bears a formidable burden." *Friends of the Earth, Inc. v. Laidlaw Env't Serv.*, 528 U.S. 167, 190 (2000) (emphasis added). While it is well established that voluntary cessation of challenged conduct like what the Court was addressing in *Laidlaw* can be an exception to mootness, Plaintiff does not rely on this exception to escape mootness. Pl.'s Br. 21. Nor could it so rely because the event that mooted this case is the *Greater Hells Canyon Council* Order and Plaintiff's lack of interest in the snag and green tree provisions, not voluntary cessation on the part of Defendants. Thus, *Laidlaw*'s added nuance regarding voluntary cessation does not apply here.

Plaintiff's reliance on *Cantrell* is similarly misguided. Pl.'s Br. 9-10 (citing *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001)). Plaintiff misreads *Cantrell* to stand for the broad proposition that a case is not moot if the Court can grant relief that is attenuated from the primary relief originally sought by the plaintiff. *Id.* at 9. But *Cantrell* involved a challenge to the National Environmental Policy Act ("NEPA") review of the U.S. Navy's plan to redevelop a historic site. 241 F.3d at 676-77. The court found that, even though historical structures had

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                              2

already been demolished as part of the plan, plaintiff's case was not moot because "effective relief may still be available" in the form of additional environmental review that could spur mitigation for damage to bird habitat from the demolition, which was the primary injury plaintiff asserted throughout the case. *Id.* at 678-79 (the Court referring to the plaintiff as "birdwatchers."). The Court's holding, then, probed the bounds of "effective relief" in NEPA cases. It did not give plaintiffs free reign to assert new interests and request relief from actions they have no interest in as the litigation proceeds, as Plaintiff attempts here.[1]

But, even if *Cantrell* could be read so broadly as to permit a plaintiff to assert new interests, that case is distinguishable for two reasons. First, the Eastside Screens Amendment has been vacated (with an injunction requiring the Forest Service to maintain the snag and green tree retention provisions), meaning the Court cannot provide effective relief because the challenged injury-causing conduct has already been halted, and vacatur of the snag and green tree retention provisions would be inconsistent with the Order in *Greater Hells Canyon Council*. Second, even if the Court could vacate the snag and green tree provisions, Plaintiff has shown no interest in, much less an injury from, those provisions. Therefore, vacatur of those provisions, even if

---

[1] Nor does *Cantrell* stand for the proposition that Defendants have a "particularly heavy" burden in establishing mootness in procedural injury cases. *See* Pl.'s Br. 10 (citing *Cantrell*, 241 F.3d at 678). Rather, the Court in *Cantrell* explained that such a "particularly heavy burden" falls on defendants "in NEPA cases" because, otherwise, defendants "could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine." *Cantrell*, 241 F.3d at 678 (citation modified). Plaintiff here pursues no NEPA claims, and the situation the Court feared in *Cantrell* is absent. Defendants did not strategically (or otherwise) implement the South Warner Project quickly to create mootness and avoid judicial review of the agency's procedural obligations for the Amendment. Rather, this case is moot because of a judicial decree in another case that already effectively granted Plaintiff the relief it seeks. *See also Feldman v. Bomar*, 518 F.3d 637, 644 (9th Cir. 2008) (in examining whether a mootness determination would allow a government agency to avoid statutory obligations, concluding that, "in any event, policy considerations alone cannot invest jurisdiction where there is no live controversy.").

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                 3

possible, would not redress any injury. As in *Cantrell*, "[t]he question is whether there can be any effective relief." *Id*. at 678. Here, the answer is no.

### A. Plaintiff's claims are moot because the Amendment has been vacated.

The challenged Amendment has been vacated with an injunction requiring the Forest Service to maintain the snag and green tree retention provisions, and the South Warner Project (also challenged by Plaintiff) will not apply the Amendment other than the required snag and green tree retention provisions. *Greater Hells Canyon Council v. Wilkes*, 2:22-cv-00859-HL (D. Or.), Dkt. No. 104 at 5; Dkt. No. 70-2 (Project Decision Memo Amendment). This means that it is impossible for the Court to grant any effective relief.

Tacitly acknowledging that vacatur of the Eastside Screens Amendment in *Greater Hells Canyon Council* removed any injury that Plaintiff asserted at the outset of this case, Plaintiff now argues that alleged procedural injury alone would be enough to bring a case (i.e., standing) and maintain a case (i.e., mootness). Plaintiff is wrong. Pl.'s Br. 12-13. Indeed, Plaintiff fails to contend with, or even mention, *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009), which held that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." And if it is insufficient to establish standing, an alleged procedural injury alone will not save a case from becoming moot if the concrete injury that existed at the outset of a case goes away, like it did here. As explained above and below, Plaintiff can no longer be injured by the Amendment now that it has been vacated, with only the snag and green tree retention provisions required to remain in effect. Therefore, Plaintiff's alleged deprivation of a procedural right *in vacuo* does not maintain subject matter jurisdiction of this case.

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                                                  4

Plaintiff's reliance on *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1179 (9th Cir. 2011) to argue standing based on procedural injury is misplaced. There, the Court determined that "a procedural injury is complete after a [Plan] has been adopted, *so long as it is fairly traceable to some action that will affect the plaintiff's interests*." *Id*. (emphasis added). As explained above and below, Plaintiff can no longer claim that any action connected to the Amendment will impact its interests because the Amendment's 21-inch diameter harvest limit has been vacated, and Plaintiff can show no concrete injury from the Court-ordered continued implementation of the Amendment's snag and green tree provisions. *See Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1081 (9th Cir. 2015) (plaintiffs can show standing with a procedural injury only if their "declarations connect th[eir] procedural injury to *imminent* harm in specific forests and project areas." (emphasis added)).

Indeed, the *Greater Hells Canyon Council* Order's requirement that the Forest Service maintain the Amendment's snag and green tree provisions shows that no effective relief can be granted in this case. *See* 2:22-cv-00859-HL (D. Or.), Dkt. No. 104 at 4-5 (under the heading "INJUNCTION," the Court states that "[t]he Forest Service shall maintain the 'snag and green tree retention' portions of the Amendment . . . while the Service prepares an Environmental Impact Statement."). Rather than engage with the fact that *Greater Hells Canyon Council* expressly requires the Forest Service to maintain the snag and green tree retention provisions, Plaintiff incorrectly characterizes Defendants' argument as collateral estoppel and argues against this strawman. Pl.'s Br. 20. But the doctrine of collateral estoppel is irrelevant—the *Greater Hells Canyon Council* Order's command to keep the Amendment's snag and green tree provisions in place is relevant because it leaves no room for this Court to fashion effective relief connected to those provisions. *See Bunker Ltd. Partnership v. United States*, 820 F.2d 308, 311

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                                                    5

(9th Cir. 1987) ("Where intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot."); *see also United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987) ("A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries."). To find otherwise would place the Forest Service in the untenable position of being required to maintain those provisions while having them vacated.[2] That cannot be the case. Because the Court can order no effective relief, this case is moot.

### B. Plaintiff's claims are moot because Plaintiff has no interest or injury associated with the Amendment's snag and green tree provisions.

Further, even if the Court could vacate the snag and green tree retention provisions, the case would still be moot because Plaintiff has no interest in, or concrete injury from, those provisions. Plaintiff's Complaint alleges only that it will be injured by the Project's logging of large trees, which the vacated Amendment no longer allows and the Project no longer includes. Compl. ¶ 10 ("If the Forest Service implements the South Warner Project as described in the Decision Memo, the logging, and especially the logging of large trees, will negatively affect the

---

[2] Plaintiff claims that the *Greater Hells Canyon Council* Order does not "completely foreclose" the Court in this case from "considering" enjoining implementation of the Amendment's snag and green tree provisions. Pl.'s Br. 20, n.8. Whether the Court can "consider" Plaintiff's requested relief is irrelevant. The Forest Service is required by an affirmative injunction in *Greater Hells Canyon Council* to maintain the Amendment's snag and green tree retention provisions. An order in this case prohibiting the Forest Service from maintaining these provisions (either through complete vacatur of the Amendment or an injunction against the provisions) would make it impossible for the Forest Service to comply with both orders simultaneously. Plaintiff seems to imply that an order in this case could somehow alter the injunction issued in *Greater Hells Canyon Council*. But final judgment in that case has been entered and relief from that judgment could be granted only upon a motion and for the reasons set forth in Rule 60(b) of the Federal Rules of Civil Procedure. No such relief has been sought or granted, and the Court can grant no effective relief in this case that would prevent the Forest Service from maintaining the snag and green tree retention provisions required by the injunction in *Greater Hells Canyon Council*.

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                 6

hunting, naturalistic landscape, and other recreational activities in the area, which will cause BMBP supporters to avoid the project area."), Dkt. No. 1; *id*. ¶¶ 4-5 (alleging that the South Warner Project is illegal because it "rel[ies] upon the illegally-approved Eastside Screens Amendment for the logging of trees ≥21" DBH."). Plaintiff's Complaint only mentions snags twice in its 67-paragraph Complaint, and these mentions are not in connection with Plaintiff's claims. *Id*. ¶¶ 48, 53. Now, however, facing dismissal of this action for lack of subject matter jurisdiction,[3] Plaintiff attempts to conjure an ongoing injury by attaching declarations to its response brief, claiming that "increased discretion" in the Amendment's snag and green tree retention provisions cause its members injury because the snag provisions allegedly increase the likelihood that large snags will be cut down. Pl.'s Br. 16 (citing David Tvedt Decl. ¶ 11, Dee Tvedt Decl. ¶ 12).[4]

       These declarations do not demonstrate a cognizable injury for two reasons. First, the Amendment's snag and green tree retention provisions do not increase the Forest Service's discretion regarding which trees to cut. As explained in Defendants' opening brief, the 1995 Eastside Screens required retention of snags and green trees (for development of future snags)

---

[3] Footnote four of Plaintiff's brief perhaps explains the Complaint's omission of nearly any reference to snags or green tree retention and Plaintiff's attempted about face now. Pl.'s Br. 7, n.4. In that footnote, Plaintiff raises the specter of receiving taxpayer-funded attorney's fees, seemingly acknowledging that it will get no fees if the case is dismissed as moot and suggesting that the United States somehow strategically mooted the case to avoid paying such fees. *Id*. (quoting *Lackey v. Stinnie*, 604 U.S. 192, 204 (2025)). But this makes no sense. Plaintiff's case was mooted by relief granted in another case, not a strategic decision to moot this litigation rather than risk a fee award.

[4] Plaintiff claims that Defendants argued that vacatur of the Amendment's snag and green tree provisions cannot be considered effective relief because the provisions are environmentally beneficial. Pl.'s Br. 18. This characterization is incorrect. While Defendants argued that the provisions are environmentally beneficial, this argument was for the limited purpose of highlighting Plaintiff's lack of interest in the snag and green tree provisions given Plaintiff's stated interests in protection of the environment and snag-dependent wildlife. Dkt. No. 70 at 9.

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                          7

greater than 21-inches in diameter when implementing timber sales. Dkt. No. 70-5; Dkt. No. 70-4 ¶ 6. The Amendment's snag and green tree retention provisions differ from the 1995 Eastside Screens because the Amendment's provisions apply to *all* project activities, not just timber sales. Dkt. No. 70-6; Dkt. No. 70-4 ¶ 6. The other primary difference is that the Amendment requires either retention of all snags over 20 inches—one-inch *below* the 1995 Eastside Screens—or retention of snags over the representative diameter of the overstory layer if that diameter is less than 20 inches, <u>or</u> preparation of a comprehensive snag analysis and maintenance or increase in snag composition, size, structure, and distribution. *Id*. Plaintiff claims that the option provided by the underlined "or" above gives the Forest Service more discretion to cut snags over 21 inches. Pl.'s Br. 18. Not so. While the Amendment gives the agency an option to prepare a snag analysis, that option comes with a mandatory standard "to *maintain or increase* diverse snag composition, size, structure, and distribution." Dkt. No. 70-6 at 2 (emphasis added) (language of Amendment's snag provision). The agency's interpretation of this option in the South Warner Project is telling: not only did the agency comply with the 20-inch diameter snag harvest limit for all Project activities (not just timber sales), the agency also completed a comprehensive snag analysis (as contemplated in the standard's second option) and retained <u>all</u> snags of <u>all</u> sizes. Dkt. No. 70-4 ¶ 8-9. The Project demonstrates that the Amendment's snag provisions leave the agency with no additional, and arguably less, discretion regarding snags.

      Second, Plaintiff's recently filed declarations do not show an interest in, or injury from, the Amendment's snag and green tree provisions because the provisions do not pose a more than speculative possibility of injury to Plaintiff's interests. Even if the Amendment's snag and green tree provisions gave the agency increased discretion—which, as explained above, they do not—Plaintiff has not shown that the alleged increased discretion would result in an injury to

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                                                  8

Plaintiff's members' stated interests in experiencing large trees on the landscape. Again, the South Warner Project is the best example of this lack of injury—there, actual implementation of the Amendment's snag and green tree provisions has been authorized, and no snags of any size, much less large snags, will be harvested other than for safety.[5] Dkt. No. 70-4 ¶ 9. Thus, the only implementation of the Amendment's snag and green tree provisions that is before the Court definitively has not harmed Plaintiff's alleged interest in experiencing large trees or snags. This alleged injury is too speculative for the Court to offer any effective relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (the injury that plaintiffs must show for standing needs to be "actual or imminent, not conjectural or hypothetical." (citation modified)); *Feldman*, 518 F.3d at 642 (holding that, in the mootness inquiry, "the adverse effect [on plaintiff's interests] . . . must not be so remote and speculative that there is no tangible prejudice to the *existing interests* of the parties." (citation modified)).

      Plaintiff nevertheless argues that a July 2025 letter from the Regional Forester directs the Forest Service to use the Amendment's snag and green tree provisions to harvest trees over 21 inches in diameter. Pl.'s Br. 19 (citing Dkt. No. 72-1). Plaintiff misunderstands the letter. The letter explains that, other than the snag and green tree provisions, the 1995 Eastside Screens are the current management direction for harvest of large trees. Dkt. No. 72-1 at 1. The letter also explains that, in the past, different National Forests have interpreted the 1995 Eastside Screens differently, applying the 21-inch diameter limit in differing circumstances—"to address this issue," the letter rescinds this differing guidance and directs the relevant National Forests "to

---

[5] While the declarations raise concerns about commercial harvest of trees over 21 inches in diameter, that activity is no longer authorized by the Project, as explained above and in Defendants' opening brief.

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                                                                        9

implement the Eastside Screens as written." *Id*. The letter then explicitly directs that "[a]s written, Section 6(d)(2)(a) [of the 1995 Eastside Screens] restricts removal of trees 21-inches and larger when" certain circumstances are present and attaches the actual language of the 1995 Eastside Screens and the Amendment's snag and green tree provisions. *Id*. Plaintiff points out the language at the end of the letter stating that "[w]hen *implementing this direction as written*, there is no need to propose a site-specific, project-level plan amendment to remove trees 21-inches and larger because you are implementing the plan direction that is currently in effect." *Id*. at 2 (emphasis added). This statement merely confirms that, when National Forests are complying with <u>both</u> the 1995 Eastside Screens and the Amendment's snag and green tree provisions as written (as opposed to the conflicting landscape of guidance documents rescinded earlier in the letter), they need not issue a site-specific Forest Plan amendment to harvest trees over 21-inches.[6] Nowhere does the letter authorize—or interpret the 1995 Eastside Screens or the Amendment's snag and green tree provisions to allow—harvesting trees over 21 inches in circumstances where the 1995 Eastside Screens prohibits it.

The South Warner Project provides further evidence that the Regional Forester's letter does not signify an intent to cut large snags or trees under the Amendment's snag and green tree provisions. The Forest Service will cut no snags of *any* size (other than for safety) in the South Warner Project, which is the only implementation of the Amendment's snag and green tree

---

[6] It is well settled that the Forest Service can both harvest a tree over 21-inches and comply with the 1995 Eastside Screens diameter limit because, by the Screens' own language, the diameter limit only applies in limited circumstances. *Greater Hells Canyon Council*, 2:22-cv-00859-HL, Dkt. No. 56 at 4-5 (Defendants' summary judgment brief explaining narratively and in table form three different timber harvest scenarios, and whether the 21-inch rule applies to each scenario; essentially, the 21-inch rule only applies when harvest is outside of Late and Old Structure forest and the amount of Late and Old Structure forest in the area is below historical levels.)

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                 10

provisions before the Court. Dkt. No. 70-4 ¶ 9. Far from the strawman Plaintiff argues against, the Amendment's snag and green tree provisions are environmentally protective and allow even less harvest of large trees and snags than before, not more.

Therefore, even if the Court could order vacatur of (and injunction against) the snag and green tree retention provisions despite the Order in *Greater Hells Canyon Council* requiring maintenance of those provisions, such vacatur would not redress any of Plaintiff's injuries. This fact further shows that Plaintiff's case is moot.

### III.     CONCLUSION

For the above stated reasons, vacatur of the Eastside Screens Amendment with continued required maintenance of the snag and green tree provisions, the Service's subsequent confirmation that the South Warner Project will not rely on the vacated portions of the Amendment, and Plaintiff's lack of interest in the snag and green tree provisions render this action moot. Therefore, the Court should dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted this 4th day of February, 2026.

        ADAM R.F. GUSTAFSON
        Principal Deputy Assistant Attorney General
        U.S. Department of Justice
        Environment and Natural Resources Division

        /s/     *Hayley A. Carpenter*
        HAYLEY A. CARPENTER (CA Bar No. 312611)
        Trial Attorney
        Natural Resources Section
        P.O. Box 7611
        Washington, DC  20044
        (202) 305-0242
        hayley.carpenter@usdoj.gov

        *Attorneys for Defendants*

United States' Reply in Supp. of Mot. to Dismiss
*Blue Mountains Biodiversity Project v. Wilkes, et al.*
Case No. 1:22-cv-01500-CL (D. Oregon)                                                                 11